UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-05100 JAK (KSx) | Date | June 3, 2022 |
| Title | ZAG America, LLC v. Andriy Harasymets | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| T. Jackson-Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION (DKT. 25)**

## I. Introduction

On June 23, 2021, ZAG America, LLC ("Plaintiff") brought this action alleging copyright infringement against Andriy Harasymets ("Defendant"). Dkt. 1 (the "Complaint"). The Complaint advances a single cause of action under 17 U.S.C. § 501(a). *Id.* ¶¶ 22-30.

On August 26, 2021, Plaintiff filed a Request for Entry of Clerk's Default. Dkt. 13 (the "First Request"). The First Request was denied without prejudice, and Plaintiff was instructed to attempt to serve Defendant by mail at Defendant's physical address. Dkt. 15. Plaintiff's subsequent attempt to do so was unsuccessful because it was determined that Defendant's address in Ukraine does not exist. Dkt. 20 ¶¶ 9-10. The Court determined that service of process through email was appropriate and concluded that Plaintiff had submitted sufficient evidence to establish that the summons and Complaint were delivered to Defendant in that manner. Dkt. 22 at 1-2. Thus, Plaintiff's Renewed Request for Clerk to Enter Default (the "Second Request" (Dkt. 20)) was granted and the Clerk was instructed to enter default against Defendant. *Id.*

On November 23, 2021, the Clerk entered default against Defendant. Dkt. 23. On March 28, 2022, Plaintiff filed a Motion for Default Judgment and Permanent Injunction. Dkt. 25 (the "Motion"). A hearing on the Motion was held on April 25, 2022, and it was taken under submission. Dkt. 27.

For the reasons stated below, the Motion is **DENIED**.

## II. Factual Background

### A. The Parties

Plaintiff is a California limited liability company with its principal place of business in Santa Monica, California. Complaint ¶ 4. It is alleged that Plaintiff is an independent "Film, TV and Digital production studio." *Id.* ¶ 7.

It is alleged that Defendant is an individual residing in Ukraine. *Id.* ¶ 5. It is alleged that Defendant conducts business in the Central District through Amazon.com using Merchant ID Account No. A2P7VNJSGZLY1A. *Id.*

B. Substantive Allegations

The Complaint alleges that Plaintiff holds copyright registrations related to its TV series, "Miraculous," which is available to stream on Netflix. *Id.* ¶¶ 8, 10. It is alleged that the two copyrights at issue are Registration No. PA 2-116-662 (the "662 Copyright") and No. PA 2-118-419 (the "419 Copyright"). *Id.* ¶ 10. It is alleged that Defendant, through his account on Amazon.com, sells products that "consist of toys and/or cake toppers based on characters from [Plaintiff]'s Miraculous® series, including 'Ladybug' and 'Cat Noir.'" *Id.* ¶¶ 13-14. It is alleged that Defendant's infringing products are "based on, or inspired by" the Miraculous series, and that the products "use designs identical, substantially similar to, or derivative of the copyrights for [Plaintiff]'s Miraculous® series, including U.S. Copyright Registration Nos. PA 2-116-662 and PA 2-118-419." *Id.* ¶¶ 15-16. Thus, it is alleged that Defendant has profited from "his unauthorized use of [Plaintiff]'s copyrighted works." *Id.* ¶ 17.

It is next alleged that Plaintiff notified Amazon of the alleged infringement and "issued a takedown notice" for the infringing products. *Id.* ¶ 18-19. It is alleged that, on June 9, 2021, Amazon notified Plaintiff that Defendant "had filed a counternotification disputing [Plaintiff]'s takedown notice." *Id.* ¶ 20. It is alleged that Amazon told Plaintiff that if it did not "file a federal lawsuit pursuant to 17 USC § 512(g)(2)(C) within ten (10) business days," Defendant's listings would be reinstated. *Id.* Based on the timing of the filing of this action, and the notice sent to Plaintiff by Amazon, it appears the "takedown" at Amazon remains in place such that Defendant is not permitted to continue to present the disputed products, at least under his current account. *See* Dkt. 1-4 at 1.

The Complaint alleges that Plaintiff is the exclusive owner of the 662 Copyright and 419 Copyright, and that Defendant did not attempt to obtain consent or authorization to produce or distribute works protected by those copyrights. Complaint ¶¶ 23-24. It is further alleged that Defendant infringed those copyrights by selling certain products, and that "Defendant willfully and intentionally caused injury to [Plaintiff] by refusing the removal of Defendant's Infringing Products after being put on actual notice of his infringements of [Plaintiff]'s copyrights . . . despite having the ability to do so." *Id.* ¶ 25-26. It is alleged that Defendant "willfully and intentionally caused further injury to [Plaintiff] by responding to [the] takedown notice with a counternotification" that included false information. *Id.* ¶ 27.

Plaintiff attached four documents to the Complaint. The first is a Certificate of Registration issued by the United States Copyright Office for Registration No. PA 2-116-662. Dkt. 1-1. The Certificate was issued on January 26, 2018, and states that the author is ZAG America, LLC. *Id.* The Title of Work is "Stormy Weather," and the Series Title is "Miraculous Tales of Ladybug & Cat Noir." *Id.*

The second is a Certificate of Registration issued by the United States Copyright Office for Registration No. PA 2-118-419. Dkt. 1-2. The Certificate was issued on January 26, 2018, and states that the author is ZAG America, LLC. *Id.* The Title of Work is "Volpina," and the Series Title is "Miraculous Tales of Ladybug & Cat Noir." *Id.*

The third appears to be a confirmation that Plaintiff had reported one infringing product sold by a seller

whose name begins "Harasymet . . ." Dkt. 1-3.

The fourth is an email correspondence from Amazon stating that a counter notice was filed in response to Plaintiff's copyright infringement notice. Dkt.1-4 at 1. The document also includes the counter notice allegedly sent by Defendant. *Id.* at 2-3.

C. Remedies Sought in the Complaint

The Complaint seeks an award of actual damages pursuant to 17 U.S.C. § 504(b), or, alternatively, "statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement." Complaint at 7.

The Complaint also seeks the entry of a permanent injunction that would bar Defendant from the following actions:

- Marketing, distributing, selling or offering for sale any infringing products;
- Infringing on Plaintiff's copyrights, including but not limited to the 662 Copyright and the 419 Copyright;
- Destroying or removing Defendant's infringing products;
- Concealing, destroying or disposing of any computer files, documents or other evidence relating to Defendant's infringing products; and
- Concealing, transferring or disposing of any finances stemming from the infringing products.

*Id.* at 7-8.

Plaintiff also seeks a court order requiring that the infringing products be impounded pursuant to 17 U.S.C. § 503(a), be destroyed pursuant to 17 U.S.C. § 503(b), that Defendant "provide complete accountings for any and all monies, profits, gains and advantages" derived from the infringing products, including prejudgment interest, and that Defendant be restrained from engaging in infringing activity "relating to the material on the service provider's system or network." *Id.* at 8-9.

Finally, Plaintiff seeks an award of attorney's fees and costs. *Id.* at 9.

## III. <u>Analysis</u>

A. Personal Jurisdiction

1. Legal Standards

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties . . . . To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1203 (10th Cir. 1986)). A court does not have personal jurisdiction over a party unless that person is properly served or has waived service. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d

1174, 1177 (9th Cir. 2004). The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Mattel, Inc. v. Greiner & Hausser GmbH,* 354 F.3d 857, 862 (9th Cir. 2003).

Fed. R. Civ. P. 4(f) provides that an individual may be served in a foreign country "by other means not prohibited by international agreement, as the court orders."

2. Application

On October 20, 2021, counsel for Plaintiff filed a declaration stating that Defendant had been served with the summons and Complaint through his email address, which was taken from the counternotice that Defendant sent to Amazon in response to Plaintiff's take-down notice. Dkt. 20 ¶¶ 3-4. The Court directed Plaintiff to attempt mail service, which was unsuccessful because it was later determined by Federal Express that the Defendant's address did not exist. Dkt. 22 at 1. It was then determined that sufficient good cause had been shown to allow service of process through email, pursuant to Fed. R. Civ. P. 4(f)(3). *Id.*; *see Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572, 2007 WL 1140639, at *2-*3 (N.D. Cal. Apr. 17, 2007) (approving email service on defendant located in Ukraine). It was determined that the declarations and attached exhibits supporting Plaintiff's Second Request were sufficient to establish that the summons and Complaint were delivered to Defendant. Dkt. 22 at 1-2. The Clerk was instructed to enter default against Defendant. *Id.* at 2.

Subsequently, it has been determined that the summons and Complaint were served on Defendant by Benjamin C. Johnson. Dkt. 20 ¶¶ 3-4, 6-8. At the time of service, Johnson declared that he was "the Head of Legal and Litigation at Plaintiff ZAG America, LLC." Dkt. 20 ¶ 1.[1] In the Proof of Service, Johnson declared that he is "over the age of eighteen years, and not a party to the within action." Dkt. 20-1 at 6.

Fed. R. Civ. P. 4(c)(2) provides that any "person who is at least 18 years old and not a party may serve a summons and complaint." As the "Head of Legal and Litigation" for Plaintiff, a corporate entity, Johnson is deemed a party. In light of this issue, at the hearing on the Motion, Johnson was directed to re-serve the pleadings in this case, by email, by a person who not an employee or employee-officer of Plaintiff. Dkt. 27. Johnson was further directed to file a proof of service and a declaration as to whether there was any response by Defendant to such email service. *Id.* The proof of service and accompanying declaration as to the foregoing matters were to be filed on or before May 16, 2022. *Id.*

As explained below, the Motion is deficient. Thus, Plaintiff is also directed to serve any amended complaint using the same process described above.

B. Default Judgment

1. Legal Standards

a) Procedural Requirements

[1] In a later declaration, which was filed in support of the Motion, Johnson declares that he is "the Senior Vice President and Head of Legal and Litigation at Plaintiff ZAG America, LLC." Dkt. 25-1 ¶ 1.

Local Rule 55-1 requires that a party moving for default judgment submit a declaration and include information with respect to each of the following: (i) when and against which party default has been entered; (ii) the identification of the pleading to which default has been entered; (iii) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (iv) whether the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, applies; and (v) whether notice has been provided to the defaulting party, if required by Fed. R. Civ. P. 55(b)(2).

b) Substantive Standards

Fed. R. Civ. P. 55(b) grants the trial court discretion as to whether a default judgment should be entered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Entry of default does not alone warrant or require entry of a default judgment. *Id.* The Ninth Circuit has established seven factors that may be applied in determining whether a default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). They are: (i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claim; (iii) the sufficiency of the complaint; (iv) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy favoring decisions on the merits. *Id.*

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977). To determine damages, a court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

2. Application

a) Procedural Requirements

Plaintiff has complied in part with Local Rule 55-1. Default against Defendant was entered on November 23, 2021. Dkt. 23. Plaintiff alleges that Defendant is neither an infant nor an incompetent person, and that he is not subject to the Servicemembers Civil Relief Act. Dkt. 25-1 ¶ 13. Notice of the Motion is not required by Fed. R. Civ. P. 55(b)(2) because Defendant has not appeared in this action either directly or through a representative. However, for the reasons stated above, the service was defective and must be redone.

b) *Eitel* Factors

(1) <u>The Possibility of Prejudice</u>

A plaintiff will be prejudiced if, absent the entry of a judgment, that plaintiff will be left without a remedy. *See Philip Morris USA, Inc., v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. Dec. 31, 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery."); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other

recourse for recovery.”).

Defendant failed to participate in the litigation after being served. Plaintiff will be prejudiced absent entry of a judgment because there would be no other remedy available to it. Therefore, the first *Eitel* factor weighs in favor of granting the Motion.

(2) The Merits of Plaintiff’s Substantive Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors asses the merits of the claims of the moving party and the sufficiency of its pleadings. These factors “require that a [movant] ‘state a claim on which [it] may recover.’” *PepsiCo,* 238 F. Supp. 2d at 1175 (quoting *Kloepping v. Fireman’s Fund*, No. C 94-2648 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)). Courts frequently analyze these factors together. *See id.* Thus, if the complaint is sufficient, a plaintiff’s substantive claim has merit for purposes of a default judgment. *See id.*

As noted, the Complaint advances a single cause of action for copyright infringement.

(a) Legal Standards

To establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of original elements of the work. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (citing *Feist Publ’ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). “The second prong of the infringement analysis contains two separate components: ‘copying’ and ‘unlawful appropriation.’” *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) 1064 (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)). “Although these requirements are too often referred to in shorthand lingo as the need to prove ‘substantial similarity,’ they are distinct concepts.” *Id.* “In the absence of direct evidence of copying, . . . the plaintiff ‘can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff’s work and that the two works share similarities probative of copying.’” *Id.* When “the similarity is of a type which will preclude any explanation other than that of copying,” access can be reasonably inferred. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) (citation omitted).

“On the other hand, the hallmark of ‘unlawful appropriation’ is that the works [have] substantial similarities.” *Led Zeppelin*, 952 F.3d at 1064 (emphasis in original). Such substantial similarity is evaluated under a two-part test. *Id. First*, the “extrinsic test” “compares the objective similarities of specific expressive elements in the two works.” *Id. Second*, the “intrinsic test,” looks for “similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.” *Id.* (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008)).

(b) Application

(i) Ownership

The Complaint alleges that Plaintiff is the owner of the 662 Copyright and the 419 Copyright. Complaint ¶ 10. Appended to the Complaint are Certificates of Registration for the two copyrights, each of which

identifies Plaintiff as the copyright author and claimant. Dkt. 1-1; Dkt. 1-2. This is sufficient to establish that Plaintiff has plausibly alleged ownership of valid copyrights. *See Led Zeppelin*, 952 F.3d at 1064; *Patagonia, Inc. v. McHugh,* No. CV19-07666 JAK (AFMx), 2020 WL 4258818, at *5 (C.D. Cal. Apr. 21, 2020).

"[C]opyright protection is available only 'for characters that are especially distinctive.'" *DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015) (quoting *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1224 (9th Cir. 2008)). The Ninth Circuit has established "a three-part test for determining whether a character in a comic book, television program, or motion picture is entitled to copyright protection." *Id.* at 1021. The character must (1) "generally have 'physical as well as conceptual qualities'"; (2) be "'sufficiently delineated' to be recognizable as the same character whenever it appears," including through "consistent, identifiable character traits and attributes"; and (3) be "'especially distinctive' and 'contain some unique elements of expression.'" *Id.* (citations omitted); *see also Daniels v. Walt Disney Co.*, 958 F.3d 767, 771 (9th Cir. 2020) ("Consistently recognizable characters like Godzilla or James Bond, whose physical characteristics may change over various iterations, but who maintain consistent and identifiable character traits and attributes across various productions and adaptations, meet the test.").

The Complaint alleges that Defendant's infringing products consist of "toys and/or cake toppers based on characters from ZAG's Miraculous® series, including 'Ladybug' and 'Cat Noir.'" Complaint ¶ 14. The threshold question is whether these allegations, if deemed true, are sufficient to establish that Plaintiff's characters are copyrightable.

Plaintiff has failed to allege with sufficient detail copyright ownership of the characters "Ladybug" and "Cat Noir." *See Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1174 (N.D. Cal. 2015) ("[A]lthough Plaintiffs allege that 'dozens of characters from "Heroes Charge" are derived from and substantially similar to Blizzard and Valve's characters,' they plead no facts demonstrating that any one of the dozens of characters are plausibly copyrightable."). *Blizzard* explained that the Ninth Circuit in *Towle* extended copyright protection to the Batmobile character "only after extensively cataloging the car's distinctive characteristics." *Id.* at 1173-74 (citing *Towle*, 802 F.3d at 1021-22). *Blizzard* ultimately concluded that the plaintiff failed to allege copyright ownership in its characters under the *Towle* test because the plaintiff alleged only "conclusory statements" that the "characters are 'distinctive . . . with names, distinctive physical appearances, clothing, weapons, traits, abilities, and ongoing stories.'" *Id.* (alteration in original).

The allegations in the Complaint are insufficient for similar reasons. The Complaint does not allege the physical qualities of the characters "Ladybug" and "Cat Noir," that the characters have consistent, identifiable character traits, or that the characters are especially distinctive. Rather, the Complaint alleges that the infringing products "make[] direct references" to the Miraculous "series, characters and products," and "use designs identical, substantially similar to, or derivative of" the copyrights Plaintiff holds. Complaint ¶¶ 15-16. However, without any alleged description of the characters "Ladybug" and "Cat Noir," those allegations are not sufficient to meet the test stated in *Towle*. *See Towle*, 802 F.3d at 1021-22 (determining that the Batmobile is "highly-interactive," "equipped with high-tech gadgets and weaponry," and "bat-like in appearance, with a bat-themed front end, bat wings extending from the top or back of the car, exaggerated fenders, a curved windshield, and bat emblems on the vehicle"); *Daniels*, 958 F.3d at 772-73 (determining that certain characters were not copyrightable because they

changed in physical appearance, contained "few . . . identifiable character traits and attributes that are consistent over the various iterations," had a different name in each iteration of the characters, and "are not 'especially distinctive'" (citation omitted)).[2] Without any factual allegations concerning the characters at issue, Plaintiff cannot plausibly establish that the characters are copyrightable.

For these reasons, Plaintiff has failed to allege copyright ownership in the characters "Ladybug" and "Cat Noir."

(ii) Infringement

"In the absence of direct evidence of copying . . . the plaintiff 'can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying.'" *Led Zeppelin*, 952 F.3d at 1064 (citation omitted). Assuming the allegation that the infringing products are described as being "Inspired by Ladybug + Cat Noir" is sufficient to establish copying, Complaint ¶ 14, Plaintiff nonetheless fails to allege unlawful appropriation. *See Led Zeppelin*, 952 F.3d at 1064.

As noted, the Ninth Circuit applies a "two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work." *Id.* Under the extrinsic test, Plaintiff has failed to allege any "objective similarities of specific expressive elements in the two works." *Id.* As the Ninth Circuit has explained, "[t]here can be no proof of 'substantial similarity' and thus of copyright infringement unless [plaintiff]'s works are juxtaposed with [defendant's] and their contents compared." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir. 1986). The Complaint "is entirely devoid of allegations establishing the protectable elements of the infringed works," and "Plaintiff makes no effort to compare the copyrightable elements of [the two works]." *Evans v. McCoy-Harris*, No. CV 17-8345-DMG (AGRx), 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019). The Complaint does not allege any visual or expressive characteristics of its characters. The allegations that Defendant's products "use designs identical, substantially similar to, or derivative of the copyrights for [Plaintiff]'s Miraculous® series, including U.S. Copyright Registration Nos. PA 2-116-662 and PA 2-118-419" lack specificity. Complaint ¶ 16. The allegations are also conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

As noted above, the sole alleged connection between Plaintiff's series and Defendant's products is that the infringing products are described as "Inspired by Ladybug + Cat Noir." Complaint ¶ 14. "[T]o prove unlawful appropriation . . . the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117 (citation omitted). Without any factual allegations comparing the characters in Plaintiff's series to Defendant's products, there is no showing that the works are substantially similar. *See id.*

Because both the extrinsic and intrinsic "tests must be satisfied for the works to be deemed substantially similar," Plaintiff has failed to allege that Defendant's copying of Plaintiff's work gives rise to liability for infringement. *Led Zeppelin*, 952 F.3d at 1064.

---

[2] Nor has Plaintiff alleged that the characters "Ladybug" and "Cat Noir" constitute "'the story being told' in a work." *Daniels*, 958 F.3d at 773 (quoting *Warner Bros. Pictures v. Columbia Broad. Sys.*, 216 F.2d 945, 950 (9th Cir. 1954)). There are no allegations that the characters "so dominate the story such that it becomes essentially a character study." *Id.* at 774.

* * *

Because the Complaint fails to state a claim for copyright infringement, these factors preclude granting the Motion.

(3) The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo,* 238 F. Supp. 2d at 1176. Default judgment is disfavored when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007); *see also Eitel*, 782 F.2d at 1472 (in light of parties' dispute as to material facts, entry of $3 million judgment would not be appropriate). However, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2-4 (N.D. Cal. June 30, 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate because each amount was supported by sufficient evidence).

Plaintiff seeks an injunction that prevents Defendant from using any Miraculous copyrights in connection with the sale of infringing products. Plaintiff also seeks statutory damages of $100,000. Dkt. 25 at 11. Although injunctive relief would likely not be unduly burdensome, a $100,000 statutory award is high relative to the single alleged infringement. *See Patagonia, Inc.*, 2020 WL 4258818, at *6 (where "no evidence of the level of sales has been presented, a statutory damages award of $10,000 per work . . . is reasonable"). Additionally, as noted above, Plaintiff fails to state a claim for copyright infringement. Because Plaintiff has failed to allege a claim for relief, this factor precludes granting the Motion.

(4) The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all facts pleaded in a complaint are deemed true, except those as to damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987). "Defendant[] could have disputed the material facts in relation to the allegations brought by the Complaint, but the failure to answer the Complaint supports a finding that this is unlikely." *Patagonia, Inc.*, 2020 WL 4258818, at *6. Therefore, the fifth *Eitel* factor weighs in favor of granting the Motion.

(5) Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default was due to excusable neglect by the non-moving party. It has been established that Defendant was not properly served with the Complaint. "At no time has Defendant appeared to present a defense." *Patagonia, Inc.*, 2020 WL 4258818, at *6. Therefore, this factor presently weighs against granting the Motion.

(6) The Strong Policy Favoring Decisions on the Merits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-05100 JAK (KSx) | Date | June 3, 2022 |
| Title | ZAG America, LLC v. Andriy Harasymets | | |

The final *Eitel* factor considers the strong policy that favors deciding claims on the merits. This factor generally disfavors the entry of default judgment. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp.2d at 1177 (citation and internal quotation marks omitted).

* * *

Based on a review and balancing of the *Eitel* factors, the Motion is **DENIED** without prejudice.

## IV. Conclusion

For the reasons stated in this Order, the Motion is **DENIED** without prejudice. Plaintiff may file an amended complaint within 14 days from the issuance of this Order. If an amended complaint is filed, Plaintiff shall, through an individual 18 years old or older who is not an employee or employee-officer of Plaintiff, serve any such amended complaint on Defendant through email service. Upon the filing of an amended complaint, and its proper service, if there is not a timely response, Plaintiff may then seek the entry of default. If that relief is granted, Plaintiff may promptly file a renewed motion for the entry of a default judgment. As stated at the April 25, 2022, hearing, whether a stay of the proceedings on such a motion is warranted in light of the present circumstances in Ukraine, will be determined by the Court.

**IT IS SO ORDERED.**

________ : ________

Initials of Preparer tj